**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LEE & ASSOCIATES OF ILLINOIS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DANIEL WORDEN, <br><br> Defendant. | **-JURY DEMANDED-** <br><br> Case No. |

**COMPLAINT**

Plaintiff Lee & Associates of Illinois, LLC ("Lee & Associates" or "Plaintiff"), by its undersigned counsel, and for its Complaint against Defendant Daniel Worden ("Worden" or "Defendant"), states:

**INTRODUCTION**

1.      This case concerns the Defendant's admitted theft of Plaintiff's most sensitive data and trade secret information that Plaintiff meticulously accumulated over 21 years at an estimated cost of several millions of dollars. Defendant downloaded Plaintiff's data right before departing to one of Plaintiff's competitors. Although some data has been recovered, a large portion of the stolen data remains unaccounted for, as well as copies of that data, presenting an ongoing threat to Plaintiff's business.

**THE PARTIES**

2.      Plaintiff Lee & Associates is an Illinois limited liability company with its principal place of business in Rosemont, Illinois.

3.      Defendant Daniel Worden is an individual and upon information and belief, is a resident of Naperville, Illinois.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c).

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant Worden resides in this District and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## ALLEGATIONS IN COMMON TO ALL CLAIMS

6.      Lee & Associates is a real estate brokerage firm, offering a broad array of real estate services tailored to meet the needs of its clients primarily in the Chicagoland area, as well as in southeast Wisconsin and northwest Indiana. These services include commercial real estate brokerage, property management, valuation, asset management, and finance. The real estate professionals who work at Lee & Associates benefit from the sharing of real-time and historic market intelligence that is vital to the delivery of superior commercial real estate services. This unique service platform has attracted some of the most experienced and talented real estate professionals in the industry to Lee & Associates.

### A.  PLAINTIFF'S PROPRIETARY DATABASE

7.      Over the past 21 years, Lee & Associates has compiled a database reflecting detailed, non-public proprietary information regarding lease transactions for and availability of commercial space, including, but not limited to, data regarding rental rates and rent per square footage, improvements to rental spaces, historical trends, and other detailed information to enable brokers to analyze market rates and negotiate favorable rental rates for clients (the database is referred to as "LeeNet"). LeeNet is a key point of differentiation for Lee & Associates as many competitors rely on publicly-available data (such as Costar), but Lee & Associates believes its data

4878-6818-8012, v. 3

is far more accurate. Additionally, the data in LeeNet is utilized to provide all of Lee & Associates

quarterly and year-end statistics and ongoing market analyses for its clients and customers. Lee &

Associates expended significant time and expense to make LeeNet a proprietary tool, giving its

brokers a substantial advantage in the marketplace, both in procuring clients and in helping those

clients achieve savings. LeeNet currently contains in excess of 70,000 records.

8.      To ensure that LeeNet remains up-to-date, Lee & Associates has a minimum of two

(2) full-time employees who have primary responsibility for inputting data and ensuring that

LeeNet remains operational. The primary research team receives ongoing support from

approximately forty (40) Lee & Associates brokers to ensure data accuracy.

9.      In order to maintain the confidentiality of its proprietary database and related

records, Lee & Associates requires its brokers to sign agreements which specifically acknowledge

the proprietary nature of the database and supporting records, noting that such information is a

trade secret as defined by Illinois law.

10.     In addition, the Lee & Associates Employee Handbook specifically notes the need

to safeguard Plaintiff's confidential information:

> Each employee is responsible for safeguarding the confidential information
> obtained during employment. In the course of your work, you may have access to
> confidential information regarding Lee, its suppliers, its customers, or perhaps
> even fellow employees. You have the responsibility to prevent revealing or
> divulging any such information unless it is necessary for you to do so in the
> performance of your duties. Access to confidential information should be on a
> "need-to-know" basis and must be authorized in writing by the Managing Director.
> Any breach of this policy will not be tolerated and Lee may take legal action.

**B.  LEE & ASSOCIATES HIRES DANIEL WORDEN WHO AGREES TO KEEP COMPANY INFORMATION CONFIDENTIAL**

11.     In July 2021, Lee & Associates hired Daniel Worden as an Associate Research

Director. In this role, Worden was responsible for, among other tasks, maintaining Plaintiff's

proprietary database, including inputting data regarding facility, space, and land availabilities, as well as key, non-public data concerning completed lease and sale transactions.

12.     Worden signed a Confirmation of Receipt confirming that he had received a copy of the Lee & Associates Employee Handbook. In signing this document, Worden confirmed that he understood and agreed that it was his responsibility to read and familiarize himself with the policies and procedures contained in the handbook, which included the policies concerning the safeguarding of confidential information. A copy of Worden's Confirmation of Receipt of the Employee Handbook is attached as Exhibit A.

### C.  WORDEN RESIGNS AND IMMEDIATELY STARTS DOWLOADING KEY DATA FROM THE COMPANY'S PROPRIETARY DATABASE

13.     On March 23, 2023, Worden sent an email to Plaintiff's principals, informing them that he had accepted a position with a competitor of Lee & Associates, NAI Hiffman. Worden stated that Friday, April 7, 2023 would be his last day at Lee & Associates.

14.     After Worden submitted his resignation, Plaintiff ran a standard report of download activity from its database.  As a result, Plaintiff discovered, among other things, that during a 9-minute period on March 22, 2023 Worden improperly and illegally perpetrated multiple data downloads to his home computer during non-work hours.  These downloads included over 10,000 proprietary records on LeeNet. A copy of the download report showing Worden's activity is attached as Exhibit B.

15.     As soon as Lee & Associates discovered Worden's download activity, principals at Lee & Associates immediately requested a meeting with Worden to question him about the data theft.

16.     The meeting between Lee & Associates and Worden occurred on March 28, 2023. During this meeting, Worden repeatedly lied and denied that he did anything. When initially

4

questioned about his suspicious activity in downloading large amounts of data from LeeNet, Worden denied three (3) times that he had downloaded any records from LeeNet. After Lee & Associates' Principals informed Worden that Plaintiff had detailed reports on the timing and quantity of his illegal download activities, Worden finally broke down and admitted his thefts.

17.     Only after Worden learned that his data theft had been tracked did Worden reluctantly admit to his actions and ask if there was anything he could do.

18.     Lee & Associates demanded that Worden return its data. In response, Worden informed Lee & Associates that Worden had one (1) flash drive in his car that he claimed contained all of the data he had taken, and he went out to retrieve it.

19.     Worden was gone for quite some time, and, upon his return, he tendered one (1) flash drive to Lee & Associates. Worden again represented that the flash drive contained data reflecting approximately 12,000 records that he downloaded from LeeNet. Those records included proprietary and confidential information, including detailed, non-public information regarding lease transactions and availability of commercial space, including, but not limited to, data regarding rental rates and rent per square footage, improvements to rental spaces, historical trends, and other detailed information that would enable Plaintiff's competitors to utilize data across several markets to negotiate favorable rental rates for their clients.

20.     Worden also revealed that some data was located on his work computer.

21.     Upon Plaintiff's review of both the flash drive and Worden's work computer, it was discovered that one large download was missing and not returned to Lee & Associates.  Worden would not confirm where this missing data was located.

22.     On March 28, 2023, Worden signed a letter admitting his guilt, admitting his theft of Plaintiff's proprietary data, including specifically that he had downloaded proprietary database

4878-6818-8012, v. 3

information to a flash drive on several dates. A copy of Worden's admission of theft is attached as Exhibit C. Worden admitted that he thought it would make him look better and smarter if he brought Lee & Associates' data with him to his new employer since his employer utilizes the same database platform as Lee & Associates.

23.     Although Worden's admission states that he returned the flash drive as well as any other information and equipment containing Plaintiff's proprietary information, Lee & Associates subsequently learned that Worden had also downloaded its proprietary information to his personal computer. Lee & Associates has not received and has not been able to retrieve that data, nor has Worden provided any assurances that the LeeNet proprietary data on his personal computer has been deleted and/or that it has not been viewed, downloaded, or otherwise transferred. Because Worden used his home computer during non-business hours to steal Lee & Associates' data, Plaintiff remains concerned that Worden still has its data in his possession on said home computer and that he has transmitted the data to other locations and/or to third parties.

24.     Furthermore, Worden has not advised Plaintiff that the data Worden wrongfully downloaded was not transmitted or shared with any other individuals or with Worden's new employer, NAI Hiffman.

25.     Following its discovery of Worden's suspicious downloads of data from LeeNet, Lee & Associates engaged an expert to conduct a forensic examination of the flash drive. Lee & Associates has spent in excess of $5,000 on such investigation.

26.     Upon information and belief, Worden is now employed by NAI Hiffman, a competitor to Lee & Associates.

<u>COUNT I</u>
**Violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq*.**

27.     Lee & Associates incorporates by reference the allegations of Paragraphs 1 through 26 as if set forth fully herein.

28.     The information and data taken by Worden from Lee & Associates constitute trade secrets under the Illinois Trade Secrets Act ("ITSA").

29.     These trade secrets include, but are not limited to, Plaintiff's decades-long compilation of detailed, non-public information regarding lease transactions for and availability of commercial space, including, but not limited to, data regarding rental rates and rent per square footage, improvements to rental spaces, historical trends, and other detailed information to enable brokers to analyze the market rate and negotiate favorable rental rates for clients.

30.     Lee & Associates invested substantial time and resources to generate the proprietary database and data that Worden stole from it. The information contained in the proprietary database derives independent economic value by virtue of not being generally known to the public.

31.     Lee & Associates kept its proprietary database sufficiently secret to give it a competitive advantage. It has taken affirmative measures to prevent others from acquiring it or using it by, including but not limited to, requiring employees, including Worden, to adhere to confidentiality provisions in its Employee Handbook, limiting access to its computer systems and to the proprietary database, and otherwise maintaining security procedures to protect the trade secrets.

32.     Furthermore, all of the Research Department personnel at Lee & Associates are regularly reminded of the confidential and sensitive nature of Plaintiff's database and that there is a continuous need to monitor all people with access to ensure that a data breach does not occur.

4878-6818-8012, v. 3

33.     The sheer amount of data that Worden stole far exceeds the amount of data that could be reasonably used by a single person, but the value of such a massive amount of data is immense if it were imported to another company's database platform. Upon belief, Worden's new employer does not maintain a proprietary database software platform that is similar to LeeNet so the Company's data would be highly useful to Worden's new employer.

34.     Lee & Associates permitted Worden access to its trade secrets in confidence, and Worden knew that Plaintiff intended for its trade secrets to remain confidential. As such, Worden promised to keep Plaintiff's trade secrets confidential, to only use Plaintiff's trade secrets on behalf of Plaintiff, and to return Plaintiff's trade secrets to Plaintiff when his employment with Lee & Associates ended.

35.     Worden misappropriated Plaintiff's trade secrets by improper acquisition, unauthorized disclosure, and unauthorized use.

36.     Due to Worden's current employment with NAI Hiffman, a direct competitor of Lee & Associates, and his presumed continued possession of the Plaintiff's trade secrets and proprietary information, Lee & Associates is very concerned that Worden has disclosed or used, and may continue to disclose and use, Plaintiff's trade secrets in the course of his new employment.

37.     As a direct and proximate result of Worden's unlawful and wrongful conduct, Lee & Associates has been irreparably damaged, and Worden has been unjustly enriched. This unjust enrichment includes the value attributable to the misappropriated information, plus amounts Worden and his new employer NAI Hiffman have saved in costs and development by using the misappropriated information. Worden and NAI also benefit from an increased ability to attract clients to NAI Hiffman, increased productivity from the use of the misappropriated information, and increased market share. The exact amount of these damages and unjust enrichment is not

4878-6818-8012, v. 3

readily ascertainable, and Plaintiff is not currently aware whether an expert could opine on such a value, but Plaintiffs believes such damages would be well into many millions of dollars and possibly increasing on an ongoing basis.

38.     Plaintiff estimates that it has spent millions of dollars over the past 20 years vetting and compiling the data contained on LeeNet.

39.     Worden's actions described above constituted willful and malicious misappropriation in that Worden stole an alarming amount of information, lied about doing so, and did so with the deliberate intent to injure Plaintiff's business in furtherance of his own professional opportunities. As such, Lee & Associates is entitled to an award of reasonable attorney's fees, exemplary damages, and other remedies. *See* 765 ILCS 1065/5(iii); 765 ILCS 1065/4(b).

40.     Worden's conduct and continued use of the Plaintiff's misappropriated trade secrets has caused, and unless enjoined by the Court, will continue to cause, immense and irreparable injury to Lee & Associates. Lee & Associates has no adequate remedy at law for these acts and threatened acts.

**COUNT II**
**Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.***

41.     Lee & Associates incorporates by reference the allegations of Paragraphs 1 through 26 as if set forth fully herein.

42.     The information taken by Worden from Lee & Associates constitutes trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

43.     These trade secrets include, but are not limited to, Plaintiff's decades-long compilation of detailed, non-public information regarding lease transactions for and availability of commercial space, including, but not limited to, data regarding rental rates and rent per square

9

footage, improvements to rental spaces, historical trends, and other detailed information to enable

brokers to analyze the market rate and negotiate favorable rental rates for clients. Such trade secret

information is used in Illinois, Wisconsin and Indiana.

44.     Lee & Associates invested substantial time and resources to generate the data that

Worden stole from it. The information contained in Plaintiff's database derives independent

economic value by virtue of being not generally known to the public.

45.     Lee & Associates has kept this information sufficiently secret to give it a

competitive advantage. It has taken affirmative measures to prevent others from acquiring it or

using it by means, including, requiring employees, including Worden, to adhere to confidentiality

provisions in its Employee Handbook, limiting access to its computer systems and to the

proprietary database, and otherwise maintaining security procedures to protect the trade secrets.

46.     Lee & Associates permitted Worden to access its trade secrets in confidence for

purposes of his employment only. Worden knew that Lee & Associates intended its trade secrets

to remain confidential. As such, Worden promised to keep Plaintiff's trade secrets confidential, to

only use the Plaintiff's trade secrets on behalf of the Plaintiff, and to return any trade secrets to

Plaintiff when his employment with Lee & Associates ended.

47.     Worden misappropriated the trade secrets by improper acquisition, unauthorized

disclosure, and/or unauthorized use.

48.     Due to his current employment with a competitor of Lee & Associates and his

possession of its trade secrets and other proprietary information, there is a substantial likelihood

that Worden disclosed or used, and will continue to disclose or use, the Plaintiff's trade secrets.

49.     As a direct and proximate result of Worden's unlawful conduct, Lee & Associates

has been irreparably damaged and Worden has been unjustly enriched. This unjust enrichment

4878-6818-8012, v. 3

includes the value attributable to the misappropriated information, amounts Worden and his new employer NAI Hiffman have saved in costs and development by using the misappropriated information, increased ability to attract clients to NAI Hiffman, increased productivity from the use of the misappropriated information, and increased market share. The exact amount of these damages and unjust enrichment is not readily ascertainable.

50.     The acts described above constituted willful and malicious misappropriate in that Worden stole an alarming amount of information, lied about doing so, and did so with the deliberate intent to injure the Plaintiff's business in furtherance of his own professional opportunities. As such, Lee & Associates is entitled to an award of reasonable attorney's fees, exemplary damages, and other remedies. *See* 18 U.S.C. § 1836.

51.     Worden's conduct and continued use of the Plaintiff's misappropriated trade secrets has caused, and unless enjoined by the Court, will continue to cause, immense and irreparable injury to Lee & Associates. Lee & Associates has no adequate remedy at law for these acts and threatened acts.

## COUNT III
### Unjust Enrichment

52.     Lee & Associates incorporates by reference the allegations of Paragraphs 1 through 26 as if set forth fully herein.

53.     It would be inequitable and unjust for Worden to retain without payment, the pecuniary benefits he gained from his theft of Plaintiff's confidential information.

54.     Worden has been unjustly enriched and should be ordered to provide commensurate restitution to Lee & Associates. As a result of Worden's actions, Lee & Associates has been damaged to an extent which currently cannot be calculated or ascertained but which includes lost

4878-6818-8012, v. 3

profits, lost investment of money and resources, and ill-gotten profits Worden derived from his theft of Plaintiff's confidential information.

55.     There is no justification for Worden's enrichment at Plaintiff's expense, as the enrichment is solely derived from his theft of Plaintiff's confidential information.

## COUNT IV
### Violation of the Computer Fraud and Abuse Act, 18 USC 1030, *et seq.*

56.     Lee & Associates incorporates by reference the allegations of Paragraphs 1 through 26 as if set forth fully herein.

57.     Worden knowingly intended to defraud Plaintiff by exceeding the authority he had to download confidential data for Worden's personal use.

58.     Worden exceeded his authorization by downloading data either to a flash drive, Worden's personal non-work computer, or both, copying data from Plaintiff's file system.

59.     Lee & Associates suffered loss as a result of Worden's actions, including costs to conduct a damage assessment expended in excess of $5,000 in costs to investigating the scope of Worden's theft of its proprietary and confidential information.

60.     As a result, Worden's actions violated the federal Computer Fraud and Abuse Act, and Worden must be held accountable.

## COUNT V
### Breach of Contract

61.     Lee & Associates incorporates the allegations of Paragraphs 1 through 26 as if set forth fully herein.

62.     Worden's employment included his agreement to be bound by the Employee Handbook in place at Lee & Associates.

63.     Upon employment, Worden was provided a copy of the Employee Handbook.

4878-6818-8012, v. 3

64.     On August 11, 2021, Worden provided his signed copy of a Confirmation of Receipt, acknowledging, among other things, that he received the Employee Handbook and his agreement to read it and familiarize himself with the policies and procedures contained therein.

65.     Numerous sections of the Employee Handbook prohibit employees from absconding and/or exposing proprietary data of Lee & Associates.

66.     The Employee Handbook states that "Each employee is responsible for safeguarding the confidential information obtained during employment." The Employee Handbook specifies that "All electronic communications, including all software, databases, hardware, and digital files, remain the sole property of Lee and are to be used only for Company business and not for personal use." Moreover, the Employee Handbook warns that "Employees who misuse electronic communications and engage in defamation, copyright or trademark infringement, misappropriation of trade secrets, discrimination, harassment, or related actions will be subject to disciplinary action and/or immediate termination."

67.     Lee & Associates performing all its obligations in employing Worden. Notwithstanding, Worden breached all of the foregoing provisions of the Employee Handbook, causing damage to Plaintiff.

68.     Lee & Associates is entitled to recover any and all damages caused by Worden's numerous breaches, in an amount to be proved at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Lee & Associates of Illinois, LLC respectfully requests that this Court enter judgment in its favor and against Daniel Worden as follows:

13

4878-6818-8012, v. 3

(1) Enjoining Daniel Worden from using, accessing, transferring or otherwise utilizing any

data stolen from Lee & Associates of Illinois, LLC;

(2) Ordering Daniel Worden to disclose, account for and return all data stolen from Lee &

Associates of Illinois, LLC;

(3) Awarding Lee & Associates of Illinois, LLC damages in an amount exceeding the

jurisdictional limit of this Court, in an amount to be proven at trial;

(4) Awarding Lee & Associates of Illinois, LLC exemplary damages as a result of Daniel

Worden's willful and malicious misappropriation of trade secrets;

(5) Awarding Lee & Associates of Illinois, LLC its costs, including forensic computer

costs, and reasonable attorney's fees incurred in bringing and prosecuting this action;

and

(6) Granting such other and further relief that the Court may deem just and proper.


Dated: July 10, 2023                              Respectfully submitted,

                                                  **LEE & ASSOCIATES OF ILLINOIS, LLC**

                                                  By: /s/ Jason M. Metnick

                                                  Jason M. Metnick
                                                  Heather Kuhn O'Toole
                                                  **MELTZER, PURTILL & STELLE LLC**
                                                  125 South Wacker Drive, Suite 2900
                                                  Chicago, Illinois 60606
                                                  Tel. (312) 987-9900
                                                  jmetnick@mpslaw.com
                                                  hotoole@mpslaw.com

4878-6818-8012, v. 3